IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| ALAN CROSS, individually and on behalf of all others similarly situated, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 23-cv-3165<br>) |
| BRENDAN KELLY, in his official Capacity as Director of the Illinois State Police, | )<br>)<br>)<br>) |
| Defendant. | )<br>) |

## OPINION

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court are Plaintiff Alan Cross's Motion for Summary Judgment (Doc. 33) and Defendant Brendan Kelly's Cross Motion for Summary Judgment (Doc. 35). Cross brings this class action on behalf of himself and all other adult offenders residing in Illinois who have been classified as a "sexual predator" under Illinois law because of their out-of-state sex offense convictions. Cross would not be labeled a "sexual predator" but rather a "sex offender" — carrying lesser penalties — if his conviction in Missouri had occurred in Illinois. Cross claims that 730 ILCS 150/2(E-10) ("Section E-10") violates his equal protection and procedural due process rights.

I.     **UNDISPUTED FACTS**[1]

The Illinois Sex Offender Registration Act ("SORA") applies the designation of "sexual predator" to persons who have been convicted of the following: (1) sexual offenses against minors; (2) criminal sexual assault; (3) multiple sex offenses arising from separate incidents; and (4) persons who have been civilly committed. 730 ILCS 150/2(E), (E-5). For all other registerable offenses, the individual is designated instead as a "sex offender." *Id.* 150/2(A)–(B). Pertinent here, anyone "required to register in another State due to a conviction, adjudication or other action of any court triggering an obligation to register as a sex offender, sexual predator, or substantially similar status under the laws of that State" is classified as a "sexual predator" in Illinois under Section E-10 of SORA. *Id.* 150/2(A), (E), (E-10). Sex offenders convicted in Illinois are required to register for a period of 10 years, while any "sexual predator" (which includes sex offenders with out-of-state registration requirements) must register for life. *Id.* 150/7. Unlike sex offenders, sexual predators are prohibited from public parks. 720 ILCS 5/11-9.4-1.

Section E-10 was enacted to advance public safety to "protect[] the public from the danger of recidivist sex offenders," reduce sexual exploitation and abuse, and prevent Illinois from becoming a "magnet state" for sex offenders who may "move to Illinois to avoid registering or to have[] a shorter length of registration." (Doc. 33 at ¶¶ 21–22; Doc. 35 at ¶¶ 1-2). According to deposition testimony from a recently retired Acting Public

---

[1] Unless otherwise noted, the factual background of this case is drawn from the undisputed facts as conceded to in Plaintiff's statement of material facts; Defendant's response to Plaintiff's statement of material facts and additional material facts; Plaintiff's reply to Defendant's additional material facts; Defendant's reply to Plaintiff's additional facts; and exhibits to the filings.

Service Administrator for the Illinois State Police Sex Offender Registration Unit, "one of the legislature's intentions in enacting [Section E-10] was to cover individuals who might not otherwise be required to register under" other provisions of the statute. (Doc. 33 at ¶ 22) (cleaned up). Three circumstances were identified where, without Section E-10, there would be no obligation for the out-of-state offender to register in Illinois after moving to the state:

> (1) judges in Minnesota have the option to order individuals to register as sex offenders if they plead down from a sex offense to a charge that is not classified as a sex offense (*e.g.*, from sexual assault to battery); (2) a "deferred judgment" whereby an individual is required to register as a sex offender, but a conviction is not ultimately entered; and (3) a conviction from public indecency in Iowa, which would trigger an obligation to register in Iowa but not in Illinois, because Illinois only requires registration after a third or subsequent conviction for public indecency.

(*Id.* at ¶ 23). The Public Service Administrator testified Section E-10 also functions "not so much [to stop] somebody from evading their registration requirement or shortening their registration requirement but to deter them from moving to Illinois by subjecting them to longer registration and worse or more restrictive consequences." (Doc. 33 at ¶ 24) (internal quotation marks omitted).

The named plaintiff, Alan Cross, was convicted in Missouri of second degree criminal sexual abuse. (*Id.* at ¶ 35). In Missouri, a person convicted of second degree criminal sexual abuse is required to register as a sex offender for 15 years with the possibility of a 10-year registration period. Mo. Rev. Stat. §§ 589.414, 589.400. After his conviction, Cross moved to Illinois to be closer to his family. (Doc. 33 at ¶ 37). When Cross registered in Illinois, the Illinois State Police determined that the Illinois offense of

criminal sexual abuse was substantially equivalent to his Missouri conviction, so Cross was thereby classified as a "sexual predator." (*Id.* at ¶¶ 38–39).

Clarence McGee, who was disclosed as a witness, was required to register as a sex offender in Iowa for a period of 10 years due to his conviction for indecent exposure. (Doc. 33 at ¶¶ 52–53). Because he would be required to register as a sexual predator in Illinois, McGee has put his plans to move to Illinois on hold and no longer accompanies his wife during her professional travel to Illinois. (*Id.* at ¶¶ 59–60).

## II.  DISCUSSION

### A. Legal Standard

Summary judgment is proper if the movant shows that no genuine dispute of material fact exists and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if a reasonable trier of fact could find in favor of the nonmoving party. *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). A factual dispute is only material if its resolution might change the suit's outcome under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must construe facts in the light most favorable to the nonmoving party and draw all reasonable inferences in the party's favor. *Woodruff v. Mason*, 542 F.3d 545, 550 (7th Cir. 2008).

### B. Analysis

Cross argues Section E-10 violates his equal protection and procedural due process rights afforded by the Fourteenth Amendment. He contends that Section E-10 cannot survive rational basis review and that he has a valid "stigma-plus" claim against Illinois.

1. **Equal Protection**

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quotation omitted). Legislation challenged under the Equal Protection Clause is subject to heightened scrutiny if it "targets a suspect class or addresses a fundamental right." *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 637 (7th Cir. 2007). Otherwise, "[t]he general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Id.* at 637–38 (quoting *City of Cleburne*, 473 U.S. at 440). In this case, both parties agree rational basis review applies.

Under that highly deferential standard of review, "the challenger must negative every conceivable basis which might support" the statute. *Lukaszczyk v. Cook Cnty.*, 47 F.4th 587, 602 (7th Cir. 2022) (quotation omitted). "Rational basis review tolerates classifications that may be overinclusive or underinclusive." *Hope v. Comm'r of Indiana Dep't of Corr.*, 66 F.4th 647, 651 (7th Cir. 2023). As a relevant example, "[e]ven if a risk posed by two groups of [criminal sex] offenders is identical, a state may have a rational reason for treating them differently." *Id.* "If [this Court] can hypothesize a sound reason for the classification, the law survives." *Id.* (citing *FCC v. Beach Communications*, 508 U.S. 307, 313 (1993)). "Equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Beach Communications*, 508 U.S. at 313.

Cross must first demonstrate that Section E-10 intentionally discriminates against him because of his out-of-state sex offense conviction and second, the discrimination was not rationally related to a legitimate state interest. *Smith v. City of Chicago*, 457 F.3d 643, 650–51 (7th Cir. 2006). There is no doubt Section E-10 treats Cross and others similarly situated differently based on their particular criminal status. The question presented is whether the difference in treatment under Section E-10 has *any* conceivable rational basis. The Court finds that it does.

Section E-10 serves to protect the public by ensuring individuals cannot move to Illinois to avoid or reduce the registration requirements in other jurisdictions. For example, Clarence McGee, who was convicted of indecent exposure and subject to a 10-year registration requirement in Iowa, could avoid registration in Illinois if not for Section E-10. (Doc. 33 at ¶ 23). Courts have recognized that the State has a legitimate goal of protecting the public by "register[ing] as many sex offenders as the state constitution permits." *Hope*, 66 F.4th at 650–51 (requiring registration of an out-of-state conviction upon relocation to another state permissible as "extend[ing] that existing duty" in the other State); *see also Murphy v. Rychlowski*, 868 F.3d 561, 567-68 (7th Cir. 2017) (sex offender registration programs are aimed at protecting the public); *McKune v. Lile*, 536 U.S. 24, 32–33 (2002) (collecting data and recognizing that "[s]ex offenders are a serious threat in this Nation").

On that note, the Government emphasizes that Section E-10 "serves to protect the public against sex offender recidivism, [thereby] reducing crime, and reducing the sexual exploitation and abuse of children and the public." (Doc. 35 at 10). Section E-10 also

operates to deter those convicted of sex crimes from choosing to move to Illinois for similar public safety purposes; and if those individuals indeed choose to relocate, Illinois requires their registration. But Section E-10's harsher treatment, in some circumstances, of out-of-state sex offenders like Cross is not constitutionally impermissible.

Cross argues Section E-10 is overbroad and is not a rational means of advancing its intended goals. But the Seventh Circuit has before permitted disparate treatment of in-state and out-of-state offenders on similar bases that are advanced here. The statute at issue in *Hope* required sex offenders who study, work, or reside in Indiana to register in Indiana if they were required to register in another state. *Hope v. Comm'r of Indiana Dep't of Corr.*, 66 F.4th 647, 649 (7th Cir. 2023). The plaintiffs in that case were all residents of Indiana who committed sex offenses pre-SORA. *Id.* They argued "that the classification of offenders with other registration obligations is not rationally related to" "Indiana's goal of protecting the public through SORA." *Id.* at 650–51. Plaintiffs explained the "apparent oddity":

> [A] pre-SORA offender who lives in Indiana and works in Chicago will acquire a registration obligation in Illinois and therefore trigger a registration obligation in Indiana, while a pre-SORA offender who works in Gary but is otherwise identical will not have to register. . . . [T]hese two individuals could have been convicted of the exact same offense at the same time and may be considered equally dangerous, [so] distinguishing them lacks any sound reason.

*Id.* at 651. But the Court disagreed and upheld the statute's challenged provision: "[I]t is not irrational for Indiana to require as many sex offenders to register as Indiana's Constitution permits. Rational basis review tolerates classifications that may be

overinclusive or underinclusive." *Id.* (finding the statutory scheme promotes public safety).

Section E-10 does impose a lifetime registration requirement for "sexual predators" without regard to the state of conviction's registration length for the same offense. Also, those convicted in Illinois of similar offenses as Cross are not subjected to lifetime registration and Illinois prevents sexual predators, not sex offenders, from visiting public parks. While it's clear that Illinois has imposed less-than-favorable treatment towards out-of-state sex offenders, the treatment rationally advances conceivable goals, namely deterrence and public safety.

Cross advances four reasons why Section E-10 is irrational, but each are easily disposed. First, "the legislative classification reaches far too broadly to advance the state's interest in preventing persons with a requirement to register in another state from moving to Illinois to evade or shorten their registration requirement." (Doc. 33 at 22). But, as said, rational basis review tolerates overinclusivity.[2] *Hope*, 66 F.4th at 651. Second, "there is no reason to believe persons with out-of-state convictions pose a greater risk to public safety than those with equivalent convictions in Illinois." (Doc. 33 at 22). Yet it is conceivable that the Illinois legislature would want to deter sex offenders from choosing

---

[2] Cross refers to examples provided at deposition (previously outlined) where Section E-10 would require an out-of-state offender's registration where the statute's other provisions, by themselves, would not. He argues Section E-10 could be better drafted to fix the gap that it presently fills without automatically classifying those with out-of-state registration requirements as sexual predators. But the Government rightly points out that "there could be other situations — particularly if other states amend their registration requirements — where Section E-10 may apply in the future." (Doc. 41 at 6). And "[i]t is entirely reasonable for the legislature to take proactive measures to ensure that there are not loopholes that could be used to evade registration requirements in the future." (*Id.*).

to relocate to the State for public safety purposes or to prevent their avoidance of registration requirements—the "State may have a rational reason for treating [apparently identical groups of offenders] differently." *Hope*, 66 F.4th at 651. Third, "the state's interests would be fully protected if Section E-10 were eliminated." (Doc. 33 at 22). Even if that were true, "it should not be surprising that statutes are not necessarily written so that one and only one statute can apply at a time. . . . That some wear a belt and suspenders does not prove the inadequacy of either to hold up the pants, but only the cautious nature of the person wearing the pants." *United States v. Carona*, 660 F.3d 360, 369 (9th Cir. 2011); *see also Luft v. Evers*, 963 F.3d 665, 677 (7th Cir. 2020) (stating same). And, finally, "Section E-10 undermines rather than advances the state's interests by making the sex offender registry less accurate and misleading the public about the nature of the registrants' criminal conduct"—specifically by indicating "out-of-state duty to register" for individuals like Cross rather than indicating the offense itself. (Doc. 33 at 22, 28). While maintaining an accurate sex offender registry might be one goal of Section E-10, it isn't clear why the attempt at comprehensiveness by the legislature in requiring more convicted offenders to register—and be registered for a longer period of time as in Cross's situation—is negated by the arguably less informative policy choice.[3] *See Beach Communications*, 508 U.S. at 320.

---

[3] As the Government points out, because the registry also lists the state of conviction along with "out of state duty to register," any person can look to records in that state to determine the nature of the conviction.

Under the highly deferential review, the Court finds the Illinois legislature had some conceivable rational basis for enacting Section E-10. Therefore, Cross's equal protection claim is dismissed.

### 2. Procedural Due Process

Cross advances a "stigma-plus" claim to redress his alleged procedural due process injury. The Fourteenth Amendment mandates that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Before a court can determine what process (if any) was due, a plaintiff must show that there was a deprivation. *See id.* Under the Supreme Court's "stigma-plus" line of cases, a plaintiff can demonstrate that he was deprived of a constitutionally protected liberty interest by showing that (1) the Government defamed him (the stigma), and (2) the injury altered his legal status or rights (the plus). *Paul v. Davis*, 424 U.S. 693, 708–09 (1976) ("[I]t was that alteration of legal status which, combined with the injury resulting from the [Government's] defamation, justified the invocation of procedural safeguards."); *see also Hinkle v. White*, 793 F.3d 764, 767–68 (7th Cir. 2015) (collecting cases).

Cross's argument, in essence, is that his new designation in Illinois as a "sexual predator" rather than his previous classification as a "sex offender" caused new reputational injury that altered his legal rights.[4] It's clear that Cross's legal status and

---

[4] It is insufficient for Cross to allege *any* reputational injury resulting generally from his conviction of a sex crime. Cross has already been deemed a "sex offender" by Missouri and takes issue with Illinois calling him a "sexual predator" for the same crime. Cross is tasked with identifying some reputational injury brought about by his *new* designation, different from the stigma he already would have encountered as a "sex offender." And, at any rate, he concedes the point: "Calling an Individual a 'Sexual Predator' Carries *Additional* Stigma." (Doc. 38 at 23) (emphasis added).

rights have changed. For one, he must remain on the registry for life rather than for a term of years. The Government contends rather that Cross has failed to show any new injury to his reputation as a result of his new classification.

There is no dispute that Cross's previous status as a "sex offender" carries with it significant social stigma. *See, e.g., McKune*, 536 U.S. at 32 ("Sex offenders are a serious threat in this Nation."); *Creekmore v. AG*, 138 F. Supp. 2d 795, 808 (E.D. Tex. 2001) ("Sex offenders are universally regarded with contempt."). And not all sex offenses are the same. Many, for example, involve minor children, while other sex offenses do not. It's not surprising then that society generally assumes the worst when someone is a sex offender. *See Schepers v. Comm'r*, 691 F.3d 909, 914 (7th Cir. 2012) ("[A]ny kind of placement on the sex offender registry is stigmatizing[.]). Cross claims he has lost job opportunities and experienced embarrassment because of his new designation but he has not demonstrated that those opportunities would have been available to him, or that he would not have experienced similar embarrassment, if he were instead a "sex offender" in Illinois as in Missouri.[5]

Cross, however, points out that even if the stigma associated with each label were the same, the Illinois label and associated stigma is permanent while the Missouri label would diminish after some time. But assuming "sex offender" and "sexual predator"

---

[5] Cross relies on a number of cases, such as *Schepers v. Commissioner*, 691 F.3d 909 (7th Cir. 2012), that found liberty deprivations when plaintiffs were erroneously labeled "sexually violent predator" (and other similar "violent" designations) on state registries. Cross cites no case concerning the label here, "sexual predator," or any similar label. But it's at least clear that "violent" as a descriptor significantly enhances the meaning of whatever term it's attached to. A "sexually violent predator" conveys far more than a "sexual predator."

have equal stigmatizing effect proves fatal for Cross as he no longer can argue he was defamed by the Government's new designation of him. And a state's longer registration requirements cannot be invalided merely because another state has shorter requirements. *See Hope*, 66 F.4th at 650–51.

But the far easier question is whether, assuming the deprivation, Cross was afforded due process. Cross says that he was entitled to additional process upon relocating to Illinois to determine whether "sexual predator" was an appropriate descriptor for him—with his reputational interests in mind—as a convicted sex offender in Missouri.

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quotation omitted). But a plaintiff "must show that the facts they seek to establish in that hearing are relevant under the statutory scheme," otherwise there's no point to a hearing. *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 7–8 (2003). In *Connecticut Department of Public Safety v. Doe*, for example, the Supreme Court granted certiorari to determine whether "public disclosure of Connecticut's sex offender registry" "deprived registered sex offenders of a 'liberty interest' [*i.e.*, their reputation], and violated the Due Process Clause" by not affording "registrants a predeprivation hearing to determine whether they are likely to be 'currently dangerous.'" 538 U.S. at 4, 6. But whether the respondent in that case was "currently dangerous" for Connecticut to properly list him on the registry as a "*dangerous* sexual offender" was not a fact of consequence. *Id.* at 6–8. Connecticut's labeling "turn[ed] on an offender's conviction alone—a fact that a convicted offender has

already had a procedurally safeguarded opportunity to contest." *Id.* at 7 ("Individuals included within the registry are included *solely* by virtue of their conviction record and state law" and "[Connecticut] has made no determination that any individual included within the registry is currently dangerous"); *see also Murphy v. Rychlowski*, 868 F.3d 561, 566 (7th Cir. 2017) ("We do not read *Connecticut Department of Public Safety* as standing for the proposition that an individual is entitled to process to challenge the legal determinations made by the authority charged under state law with administering a sex offender statute."). The Supreme Court, accordingly, rejected his claim. *Id.* at 8.

Illinois's labeling of Cross turns entirely on his conviction in Missouri for which he has already had an adequate opportunity to contest through the Missouri criminal process. Like the respondent in *Connecticut Department of Public Safety*, Cross contests the accuracy of a state's classification—there, a *dangerous* sexual offender, and here, in Illinois, a sexual *predator*—but Cross's general contention that "calling something predatory does not make it so" (Doc. 38 at 28) is irrelevant to Illinois's statutory scheme. *See* 538 U.S. at 7–8. Cross received adequate process when he was convicted in Missouri. That conviction—and that conviction alone—qualified him under Illinois's statutory scheme as a "sexual predator" should he move to the state. Having been afforded due process, Cross's procedural due process claim must fail.

## III. CONCLUSION

For the foregoing reasons, Plaintiff Alan Cross's Motion for Summary Judgment (Doc. 33) is DENIED and Defendant Brendan Kelly's Cross Motion for Summary Judgment (Doc. 35) is GRANTED.

ENTER: October 31, 2025

COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE